DeAnne Casperson, Esq. (ISB No. 6698)
dcasperson@workandwage.com
Amanda E. Ulrich, Esq. (ISB No. 7986)
aulrich@workandwage.com
Ryan S. Dustin, Esq. (ISB No. 8683)
rdustin@workandwage.com
CASPERSON ULRICH DUSTIN PLLC
356 W. Sunnyside Road, Suite B
Idaho Falls, ID 83402
Telephone: (208) 524-0566
Facsimile: (208) 745-2523

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NICKOLAS M. MORRISON,<br><br>Plaintiff,<br><br>v.<br><br>LOWE'S HOME CENTERS, LLC,<br><br>Defendant. | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Filing Fee: $400.00 |

Plaintiff, Nickolas M. Morrison, by and through his counsel of record, Casperson Ulrich Dustin PLLC, for cause of action against Defendant Lowe's Home Centers, LLC, alleges and complains as follows:

**JURISDICTION AND VENUE**

1. This is an action brought under the Americans with Disabilities Act Amendments Act ("ADAAA"), 42 U.S.C. § 12101, *et seq.* and the common and statutory law of the state of Idaho.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 1343, and 1367; and 42 U.S.C. § 12117.

3. Venue in this action properly lies in the United States District Court for the District of Idaho, Eastern Division, pursuant to 28 U.S.C. § 1391(b) because the claims arose in this judicial district. Venue also properly lies in this district pursuant to 42 U.S.C. § 12117 because the unlawful employment practices were committed in this judicial district.

## PARTIES

4. Plaintiff Nickolas M. Morrison ("Morrison") is a male citizen and a resident of the United States of America, who resides in Pocatello, Idaho.

5. Defendant Lowe's Home Centers, LLC ("Lowe's") is a North Carolina limited liability company, with its principal place of business in Mooresville, North Carolina, and which does business in the state of Idaho.

6. At all times material to this Complaint, Lowe's regularly employed fifteen or more persons, and was engaged in an industry affecting commerce, bringing Defendant within the ambit of 42 U.S.C. § 2000e, *et seq*. and 42 U.S.C. § 12111.

## FACTS COMMON TO ALL COUNTS

7. Morrison realleges and incorporates by reference paragraphs 1 through 6 above, as though fully incorporated herein.

8. Morrison began working for Lowe's on or about January 10, 2014, as a Department Manager in the Flooring Department. Morrison was later transferred to the Millwork Department where he continued to work in the capacity of Department Manager.

9. On or about March 27, 2016, Morrison suffered an injury to his foot while at work.

10. Morrison reported the injury to Bill Goodman ("Goodman"), who at the time was acting store manager.

11. Goodman told Morrison to go home and rest his foot. Goodman did not inform Morrison that his injury was subject to worker's compensation coverage or that he needed to fill out a first report of injury or other worker's compensation paperwork.

12. Prior to reporting an injury to his foot, Morrison had an excellent employee record with no reports of discipline.

13. By March 30, 2016, Morrison was still in pain so he sought medical treatment from Dr. Brandon Wilde.

14. Dr. Wilde diagnosed Morrison with plantar fasciitis. Dr. Wilde recommended either surgery or injections. Morrison did not believe he could afford either course of treatment, so he declined further treatment. Morrison explained to Dr. Wilde that Lowe's was in the middle of its annual inventory, which required him to climb ladders repeatedly to do the counting. Dr. Wilde sent Morrison back to work with instructions to stay off ladders for 60 days. Morrison returned to work with a note from Dr. Wilde dated March 30, 2016. The note asked Lowe's to allow Morrison to not use ladders for 60 days.

15. Morrison presented Dr. Wilde's note to Daeline Reynolds ("Reynolds"), the Human Resources Manager. Reynolds rolled her eyes and otherwise acted annoyed by Morrison's report of injury and restrictions. Ms. Reynolds did not inform Morrison of his right to worker's compensation benefits.

16. Morrison also informed Store Manager Mike Cutler ("Cutler") that he was unable to climb ladders. Annoyed, Cutler told Morrison he better be prepared to do a lot of walking and assigned him to walk the floor for extended periods.

17. Cutler assigned him to walk the floor for four hours at a time while other Department Managers were assigned to walk the floor for only one hour at a time, and some not at all.

18. Following his injury, Morrison also informed Lowe's he was unable to handle freight without assistance because of the pain in his foot. Lowe's ignored his requests for assistance.

19. After Morrison reported his injury, Cutler assigned Morrison primarily to the 2:00 p.m. to 11:00 p.m. shift and would generally not allow him to work an earlier shift. On many occasions, Morrison was the only Department Manager to work the late shift, which he often had to do several days in a row.

20. Throughout the remainder of 2016, Morrison made repeated requests to Cutler, Goodman, and Assistant Manager Hugh Foster ("Foster") for assistance due to his foot injury, but each of them told Morrison they "couldn't do it."

21. On or about April 7, 2016, Morrison received an Initial Notice from his supervisor, Assistant Manager Greg Brush ("Brush") for violating the Inventory Replacement Program ("IRP") protocol.  The Initial Notice was baseless, as Morrison's alleged offense was for failing to complete the IRP report. Morrison had already completed the report, he had simply not yet submitted it. Store practice was to complete the report and submit it by 11:00 a.m., however, no other employees had been disciplined for submitting the report late.

22. On or about July 12, 2016, Morrison received a Written Notice. Shortly after arriving for work that morning at approximately 6:00 a.m., he entered the break room to put away his belongings and prepare for his shift. He was confronted by another Lowe's employee, who has a mental disability. The employee very aggressively accused Morrison of failing to take the trash to the compactor the night before. Morrison told the employee to calm down and report it to his manager who could then address it with Morrison. Another employee, Logan

Chandler was in the break room and in a loud voice said something along the lines of, "Hey a\*\*holes, calm down." Morrison said nothing further and left the break room. Chandler made the comment in jest. None of the individuals involved thought anything more of the event.

23. The break room is near the front of the store by the cash registers. Apparently one or more of the cashiers overheard at least part of the conversation, including Chandler's comments, and reported the incident to upper management, believing Morrison, not Chandler, used the expletive. Upper management accused Morrison of cursing at another employee in the presence of others on the sales floor. Morrison denied cursing and denied being on the sales floor, and refused to sign the Written Notice.

24. On or about August 14, 2016, Morrison was issued a Final Notice for another alleged IRP violation. The violation involved the August 1, 2016 IRP for which another employee was responsible. The other employee completed the IRP on August 1, 2016 and signed for it on the IRP report. Morrison had nothing to do with the IRP that day.

25. On December 21, 2016, Morrison helped a mentally disabled customer by cutting a sheet of plywood using the panel saw. The original cut was not to the customer's liking, so Morrison retrieved a second sheet of plywood at no charge and made the cut to the customer's satisfaction.

26. Morrison had not been trained on the proper use of the panel saw and only cut the lumber for the customer because he was covering for the Department Manager in the Lumber Department. He had not been informed of the required safety equipment and had seen other employees, including managers, use the panel saw without using safety equipment. Morrison left on vacation two days later.

27. On December 30, 2016, after Morrison returned from vacation, Foster told Morrison "that waterhead" had complained that Morrison had not been wearing safety equipment. "Waterhead" is a derogatory term Foster used to refer to the customer with a mental disability. On that same day, Brush notified Morrison his employment was terminated immediately for failure to wear the proper safety equipment when he cut plywood on December 21, 2016, which Brush said was a Class A violation.

28. Following his termination, Morrison contacted Regina Breyer, the head of human resources in Region 14, which includes Idaho. Morrison explained to Breyer that he had been terminated for failure to wear safety equipment while cutting plywood. Breyer told Morrison that cutting lumber without safety equipment was not a Class A violation, but was a coaching violation. She assured Morrison it was not a fireable offense and told Morrison she would help him get his job back. Later, however she told Morrison she was unable to get his job back.

29. Morrison still suffers from plantar faciitis, which affects his ability to stand or walk for extended periods.

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT
**(Failure to Accommodate)**

30. Plaintiff realleges and incorporates by reference their respective paragraphs 1 through 29 as though fully set forth herein.

31. Morrison suffers from plantar faciitis, which affects his ability to walk and stand for extended periods. Morrison's plantar faciitis is ongoing and still causes him pain to this day.

32. Despite the plantar faciitis, Morrison was able to perform the essential functions of his job with or without reasonable accommodation.

33. Morrison requested reasonable accommodations from Lowe's for his disability, including assistance with deliveries, assistance in his department, and assignments that did not require excessive walking.

34. Lowe's could have provided a reasonable accommodation for Morrison's disability by assigning him to tasks that did not require so much walking or providing him a scooter or some other means to relieve the pressure on his foot.

35. Lowe's failed to accommodate Morrison, and instead, took affirmative action to exacerbate Morrison's condition.

36. Lowe's took adverse action against Morrison shortly after learning of his diagnosis by assigning him tasks it knew would be difficult for Morrison to accomplish.

37. As a direct and proximate result of Lowe's' actions and/or failures to act, Morrison has suffered, and will continue to suffer, a loss of earnings, employment benefits, and job-related opportunities. Morrison is therefore entitled to general and compensatory damages, in an amount to be proven at trial, as well as any other equitable remedies available to him, including reinstatement.

## COUNT II
## VIOLATION OF THE AMERICANS WITH
## DISABILITIES ACT AMENDMENTS ACT
**(Retaliation)**

38. Morrison realleges and incorporates by reference paragraphs 1 through 37 above, as though fully incorporated herein.

39. Morrison engaged in a protected activity by reporting his workplace injury and disability to human resources and requesting accommodations from human resources and management.

40. Lowe's subjected Morrison to adverse employment actions subsequent to Morrison engaging in protected activity, including assigning Morrison to job tasks which exacerbated his disability, issuing Morrison write-ups, modifying his schedule so he had to work less favorable shifts, and terminating Morrison's employment.

41. Such adverse actions constitute retaliation against Morrison for engaging in protected activity.

42. As a direct and proximate result of Lowe's actions and/or failures to act, Morrison has suffered and will continue to suffer emotional distress consisting of outrage, shock, and humiliation, based upon the discrimination he suffered. Further, Morrison has suffered a loss of earnings and other employment based job opportunities. Morrison is thereby entitled to general and compensatory damages, such amount to be proven at trial, as well as any equitable remedies available to him.

43. Lowe's conduct was malicious and oppressive, and done with reckless disregard for Morrison's federally protected rights for which Morrison is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(a).

## COUNT III
## WRONGFUL TERMINATION IN CONTRAVENTION
## OF PUBLIC POLICY

44. Morrison realleges and incorporates by reference paragraphs 1 through 43 above, as though fully incorporated herein.

45. Morrison engaged in a protected activity when he reported work-related injuries and/or a disability and sought medical treatment for a work-related injury.

46. Lowe's should have reported Morrison's workplace injury to its worker's compensation insurer, and filled out a First Report of Injury and other paperwork to aid Morrison with

medical treatment for his workplace injury. Instead, Lowe's initially sent Morrison home to rest, and later retaliated against him.

47. Lowes's adverse employment actions against Morrison and termination of Morrison were motivated by Morrison's reporting of his workplace injury and Lowe's attempts to avoid its worker's compensation liability for Morrison's injury.

48. Lowe's violated the public policy of the State of Idaho by its retaliatory actions.

49. As a direct and proximate result of Lowes's actions and/or failures to act, Morrison has suffered and will continue to suffer a loss of earnings and other employment based job opportunities. Morrison is thereby entitled to damages, such amount to be proven at trial, as well as other equitable remedies available to him.

## ATTORNEY'S FEES

50. As a further direct and proximate result of Lowe's actions and/or failures to act, Morrison has been compelled to retain the services of counsel, and has thereby incurred and will continue to incur costs and attorney's fees which should be required to be paid by Lowe's pursuant to Idaho Code §§ 12-120 and 12-121; 42 U.S.C. § 12205; and 42 U.S.C. § 2000e-5(k), *et seq.*

## DEMAND FOR JURY TRIAL

Morrison demands trial by jury as to all issues triable to a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Morrison seeks judgment against Lowe's as follows:

1. For compensatory and general damages as well as statutorily available damages in an amount as shall be proven at trial, and any available equitable remedies;

2. For punitive damages;

3.	For attorney's fees pursuant to statute and costs of suit; and

4.	For such other and further relief as the Court deems just and proper.

Dated this 21st day of December, 2018

                                           /s/ _____
                                           Amanda E. Ulrich
                                           CASPERSON ULRICH DUSTIN PLLC

C:\Users\Dana\Casperson Ulrich Dustin PLLC\Casperson Ulrich Dustin PLLC Team Site - Documents\Active Cases\Morrison, Nick\Pleadings\Complaint.wpd:dg

10 - COMPLAINT AND DEMAND FOR JURY TRIAL